UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ATHEER KHADER,

    Petitioner,

v.

ERIC HOLDER, Attorney General;
JANET NAPOLITANO, Secretary, Department
of Homeland Security; REBECCA ADDUCCI,
Director, Detroit Field Office, Immigration and
Customs Enforcement; WARDEN, of the
Immigration Detention Facility,

    Respondents.
_____/

CASE NO. 11-cv-12377
HONORABLE PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

FILED
MAY 07 2013
CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN MICHIGAN

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND VACATING THE STAY OF REMOVAL (Dkt. No. 1)**

Atheer Khadher ("Petitioner"), presently incarcerated at the Calhoun County Jail in Battle Creek, Michigan, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner filed his Petition on June 1, 2011, acting *pro se*. (Dkt. No. 1.) The Government ("Respondents") filed a Response in Opposition on September 21, 2011. (Dkt. No. 7.) Petitioner filed a Reply on October 13, 2011. (Dkt. No. 8.) On February 23, 2012, Respondents filed a Supplement to their Response. (Dkt. No. 10.) On April 25, 2012, Attorney Ashley Mammo entered an appearance on behalf of Petitioner.

The Court has also received two ex parte letters from Petitioner, dated March 6, 2013, and April 8, 2013. In these letters, Petitioner requests dismissal of his Petition.

For the reasons stated below, the Petition for Writ of Habeas Corpus is DENIED and

1

Petitioner's stay or removal is VACATED.

## I. BACKGROUND

The following facts are taken from Immigration Enforcement Agent Jason Zywica's Declaration, attached to the Response in Opposition to the Petition for Writ of Habeas Corpus as Exhibit A.

Petitioner is a citizen of Iraq. On March 18, 1993, Petitioner entered the United States as a refugee, and became a lawful permanent resident on March 31, 1994. (Resp., Ex. A, Zywica Decl. ¶ 4.) On June 22, 1995, Petitioner was convicted of First Degree Criminal Sexual Conduct (Under 13), M.C.L. § 750.520b(1)(a), in the Sixth Judicial Circuit Court in Oakland County, Michigan. (Zywica Decl. ¶ 5.) On December 11, 1996, an immigration judge ordered that Petitioner be removed from the United States. (Zywica Decl. ¶ 5.) Although Petitioner reserved his right to appeal this order to the Board of Immigration Appeals, he did not do so. (Zywica Decl. ¶ 5.)

On November 9, 2010, Petitioner was paroled from the Michigan Department of Corrections, and was thereafter taken into custody by Immigration and Customs Enforcement ("ICE"). (Zywica Decl. ¶ 6.) On February 9, 2011, ICE informed Petitioner that his detention would be continued while ICE waited to receive documents requested from Petitioner to confirm his Iraqi citizenship. (Zywica Decl. ¶ 7.) In addition, "[Petitioner] was advised that due to his conviction of a serious crime he was deemed to be a threat to the public and that therefore his detention would continue." (Zywica Decl. ¶ 7.)

ICE reviewed Petitioner's detention again on May 11, 2011, informing him at that time that a request for a travel document had been submitted to the government of Iraq, and that his

removal would take place within the reasonably foreseeable future. (Zywica Decl. ¶ 8.)

On August 9, 2011, ICE informed Petitioner that it was continuing to work with the government of Iraq, and that there was no reason to believe Petitioner's removal would not take place within the reasonably foreseeable future. (Zywica Decl. ¶ 9.)

On February 9, 2012, Petitioner was interviewed by a representative of the Consulate General of the Republic of Iraq in Detroit. During this interview, Petitioner "expressed his unwillingness to be deported." (Supp. Response, Ex. A, Feb. 10, 2012 Letter.) The Consulate General denied the request for travel documents, stating "[o]nce [Petitioner] voluntarily expresses his willingness orally and in writing to leave the United States to Iraq permanently, voluntarily sign the applications in the Consulate and submit the required documents, we will be pleased to reconsider your request [for travel documents]." (*Id.*)

On February 15, 2012, Petitioner was given a Notice of Failure to Comply Pursuant to 8 CFR 241.4(g). (Supp. Response, Ex. C, Notice.) This Notice informed Petitioner that he was obligated "to make timely and good faith efforts to obtain travel or other documents necessary for [his] removal from the United States." (*Id.*) The Notice further informed Petitioner that his removal period from the United States would be extended, and that he would remain in ICE custody, until he demonstrated "reasonable efforts to comply with the order of removal and that [he is] cooperating with ICE's efforts to remove [him]." (*Id.*)

In his Petition for Writ of Habeas Corpus, Petitioner argues that his continued detention pending removal is unlawful.

## II. ANALYSIS

Petitioner does not challenge the immigration court's order of removal. Instead,

3

Petitioner argues that his continued detention is unlawful, because there is no significant likelihood of his removal to Iraq in the reasonably foreseeable future. Petitioner also contends that the removal period began on December 11, 1996, when the order of removal was entered.

Generally, after entry of an order of removal, the Attorney General has 90 days to effectuate the removal of an alien. 8 U.S.C. § 1231(a). Where the alien is already detained when the order of removal is entered, the removal period begins on "the date the alien is released from detention or confinement." 8 U.S.C. § 1231(a)(1)(B)(iii). Because Petitioner was incarcerated on the date the immigration judge ordered him removed, the removal period in the instant case began when Petitioner was paroled on November 9, 2010. Petitioner's statutory removal period therefore expired on February 11, 2011.

An alien may be detained beyond the 90-day period if the Attorney General determines that the alien is "a risk to the community or unlikely to comply with the order of removal . . . ." 8 U.S.C. § 1231(a)(6). Respondent has submitted evidence showing that Petitioner was convicted of first-degree criminal sexual conduct, and was advised that his detention would be extended beyond 90 days because he was deemed to be a threat to the public. (Zywica Aff. ¶ 7.)

The United States Supreme Court has held that § 1231(a)(6) does not authorize indefinite suspension. *Zadvydas v. Davis*, 533 U.S. 678 (2001). Under *Zadvydas*, the Attorney General has a presumptively reasonable period of six months in which to effectuate removal of an alien who continues to be detained under § 1231(a)(6). *Id.* at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement

4

> grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

Respondent admits that the six-month presumptively reasonable period for Petitioner's removal expired on May 9, 2011.

Petitioner contends that there is no significant likelihood of his removal to Iraq in the reasonably foreseeable future. However, Petitioner has not provided "good reason to believe" that his removal is unlikely to occur in the reasonably foreseeable future, aside from the fact that his removal has not yet occurred and that the Government "has had ample [sic] amount of time to secure traveling documents . . . ." (Petition at IV.) The Government has also responded with evidence rebutting Petitioner's claims that removal is unlikely in the reasonably foreseeable future. Specifically, Respondent contends that "Iraq typically is slow to issue travel documents, and is especially slow when, as in this case, the alien has communicated to the government of Iraq that he does not wish to return to Iraq." (Zywica Aff. ¶ 10.) Respondent states that "ICE and the Department of State are communicating with the government of Iraq, however, through diplomatic channels, regarding issuance of a travel document for [Petitioner]." (*Id.*) Accordingly, the Government has produced evidence that sufficiently shows that Petitioner's removal can occur in the reasonably foreseeable future.

Furthermore, Respondent has submitted evidence showing that Petitioner has acted to prevent his removal to Iraq. The February 10, 2012 letter from the Consulate General of the

5

Republic of Iraq states that the Consulate General would not issue a travel document for Petitioner because Petitioner "expressed his unwillingness to be deported." (Supp. Response, Ex. A, Feb. 10, 2012 Letter.) When an alien acts to prevent his removal, the removal period is suspended. 8 U.S.C. § 1231(a)(1)(C). As long as Petitioner acts to thwart the Government's removal efforts, or otherwise fails to cooperate with the removal efforts, his continued detention is lawful. *Pelich v. I.N.S.*, 329 F.3d 1057, 1061 (9th Cir. 2003) (holding that "an alien cannot assert a viable constitutional claim when his indefinite detention is due to his failure to cooperate with INS's efforts to remove him.").

### III. CONCLUSION

Accordingly, the Court **DENIES** the petition for a writ of habeas corpus and **VACATES** the stay of removal.

**SO ORDERED.**

PAUL D. BORMAN
UNITED STATES DISTRICT COURT JUDGE

DATED: MAY 0 7 2013